The case this morning is the City of Bloomington v. the ILRB. For the appellant, Ms. Doyle, and for the appellee, Mr. Truitt and Mr. D'Alva. You divided your time. You may proceed. Good morning. May it please the Court, I'm Linda Doyle and I represent the appellant, the City of Bloomington, on this matter. There are essentially three issues before the Court. The first is a procedural issue. Whether the City even had the right to pursue the appeal at issue before the Court. The appellees, the ILRB, and the PBPA argue that because the City did not file exceptions to the 2009 Administrative Law Judge recommended order and decision, this appeal should not be permitted. That argument has no merit. It has no basis in law or fact. The City is not appealing and did not appeal the ALJ's underlying decision that the City was motivated by Union Animus when it decided not to promote Sgt. Williams to lieutenant. Thus, the City did not file any exceptions to that recommended decision and order. The ALJ did not find that Chief Aiken's testimony with regard to that matter was made without reasonable cause and the ALJ did not award sanctions. What the City is appealing is the almost one year later decision by the State panel to grant the motion and award sanctions in this case. As I said earlier, the ALJ did not award those sanctions, so the State panel was not adopting the recommended decision and order of the ALJ on that point. Those sanctions were later awarded on motion by the State panel. Immediately thereafter, the City filed this appeal. The City is not required to file exceptions before appealing the award of sanctions. There was nothing to accept. The second procedural issue is an evidence issue. The issue is whether my affidavit is admissible in this appeal. The ILRB argues that because it was not part of the Administrative Record, it is not admissible in these proceedings. That argument also lacks merit. Of course that affidavit was not part of the Administrative Record. The City did not file it until after the State panel issued the award of sanctions. The Administrative Record was in fact closed. The proper response to the order was to file this appeal. The affidavit was attached to the appeal that was immediately in time to be filed. The ILRB's own rules contemplated admissible evidence like my affidavit to overcome the presumption of service. And that is exactly why the affidavit is offered in this case. Are you talking about Doyle's affidavit? Yes, that's me, Your Honor. And it was not a part of the Administrative Record? No, it was not, Your Honor. Contrary to the ILRB's suggestion, the City is not seeking to upend the law of service by mail or disallow service by mail. That is not the point of the affidavit. It is simply using the Board's own rules which permit evidence to challenge service to do exactly that, to challenge the presumption of service in this case. It's particularly important in this case because the City never received the motion for sanctions, but it was considered by the State Panel. In fact, it was one of the two issues that the State Panel held was persuasive. The State Panel relied on the fact that the City did not bother to respond to the motion when it awarded sanctions. For those reasons, the affidavit is admissible. The third issue before the Court is really the heart of the matter. It is whether the ILRB State Panel erred in granting the charging party's motions for sanctions in this case a little under one year after the Administrative Law Judge issued his recommended decision and order. The standard of review, as you all know, is an abuse of discretion. One of the appellate court cases that articulated best that standard of review actually reversed the Board's award of sanctions in that case, stating that although the petitioner's contentions were not persuasive and ultimately found not to be believed by the ALJ, they were at least debatable and therefore not untrue, which is the standard under the law. That is exactly the case here, Your Honors. The standard for an award of sanctions is high. The State abused its discretion by not applying it here and by not holding the charging party to its burden to prove it. There is a two-pronged test for an award of sanctions. The Board rules authorized sanctions where these two events occur. First, a party must have made factual allegations or denials that were found to be untrue and also made without reasonable cause. That did not occur here and the ALJ did not find it in his recommended order and decision. Notably, in its award, the State panel didn't even discuss in any great detail the second prong of the burden. The panel's award of sanctions is based solely on Chief Aiken's state-of-mind testimony regarding what was in his mind when he determined not to promote Sergeant Williams to lieutenant. He testified in some detail about the merit and efficiency points that were awarded to Sergeant Williams versus other sergeants up for promotion to lieutenant. Comments that Sergeant Williams made to him about enjoying watching the chief being gutted like a fish at a public meeting. Things that he had heard about Sergeant Williams misusing police department resources by buying too expensive office supplies and some other events. Chief Aiken testified at the hearing that those issues were in his mind when he decided not to promote Sergeant Williams to lieutenant. There was a great debate on the record, which is in the record before you, as to the admissibility of that evidence. The Policeman's Benevolent and Protective Association objected to it on hearsay grounds. I responded that it was not offered for the truth, it was offered for the state of mind of Chief Aiken and the ALJ admitted it for that limited purpose. By its very nature, state-of-mind testimony cannot be untrue and certainly cannot be made without unreasonable cause. And the ALJ allowed the testimony for the state-of-mind purpose. The ALJ never found in his recommended decision order that Chief Aiken's testimony was false and not made without reasonable cause. He did not say that the underlying events that Chief Aiken testified to that were in his mind didn't occur. What he said was Chief Aiken did not do enough to test the legitimacy of those events as a reason and he found Chief Aiken's testimony to be unpersuasive. Notably, there was ample third-party testimony regarding whether those underlying events in fact occurred. Two of those witnesses were witnesses proffered by Sergeant Williams himself. Let me go back just a little. Sure. Are you required under an unfair labor practice to file exceptions to the ALJ's RDO? We are required to file exceptions if we're appealing that decision, yes. We chose, we the city, chose not to appeal the decision, promote Sergeant Williams to lieutenant and award him back pay. So we did not appeal that finding. What we're appealing is the later award of sanctions by the state panel, sanctions not awarded by the ALJ or I. A finding that Chief Aiken's state of mind testimony as to what was in his mind has no basis in the record. The panel based its order on its characterization of the testimony as never offered false alternative reasons. That characterization has no basis in the record. First, this was the first time that Chief Aiken ever testified in this matter. He testified at the hearing. There was a deposition that Chief Aiken gave in a different matter, in a federal court matter, challenging the promotion on different grounds. There, the challenge was due process. There, Sergeant Williams argued that the promotion was a property right and it was not due process. Ironically, the city prevailed in that matter. But in any event, the deposition was in a different matter. Chief Aiken testified over and over on the record in that deposition that there were other things in his mind. He just couldn't recall them at the time. I have no doubt that the Policeman's Benevolent Protective Association will argue that Chief Aiken should have corrected or amended his deposition testimony because that is what occurred at the hearing. Council argued to Chief Aiken that he should have, or pointed out to Chief Aiken that he did not amend his deposition testimony to add those reasons when he recalled them. That is not a basis to find his testimony at the hearing, the very first time he testified in that matter, to be untrue, and the Administrative Law Judge did not make that finding. His testimony was not inconsistent with the Respondent's answer. In fact, the ALJ declined to award sanctions based on the Respondent's answer. And finally, as I said earlier, and is noted in page 10 of our brief in footnote 3, there was ample third-party testimony as to the underlying events that Chief Aiken testified were in his mind. The only issue was not whether those events occurred, but was whether they motivated him. As the ALJ said in his opinion, he chastised Chief Aiken for not researching the legitimacy of those independent events that were in his mind. As the dissent said, even if the ALJ had found that Chief Aiken's statements were not just unpersuasive, but untrue, and even if that was correct, it's still not enough for sanctions under the rule. There's a second prong to the test. Untrue and unpersuasive is not enough because that does not support the independent required finding that those statements were made without reasonable causes required by law. In fact, the State Panel didn't discuss in any great detail that prong of the test, which in and of itself is an abuse of discretion. Every case on which the State Panel relied is distinguishable, causing every one of those cases, the sanctioned party at some point along the way, on the record, admitted that the allegation or denial at issue was in fact false. That did not happen in this case, as the dissent pointed out.  So blatantly false as to constitute further evidence of union animus. That comes from the ALJ's decision. And to what was he referring? Chief Aiken's testimony as to his state of mind at the time he made the decision to promote, not to promote, excuse me, Sergeant Williams to lieutenant. That sounds as if the ALJ said Chief Aiken was a liar. What the ALJ said is Chief Aiken should have tested the legitimacy of those reasons. Those reasons were not false. In fact, there were third parties who testified that those events occurred. Well, but the phrase blatantly false, that is not necessarily a statement that the events did not occur. It is a statement that Chief Aiken's contention that those played a part, a reasonable part, in his decision. The ALJ found that to be blatantly false. He's essentially saying you are giving reasons that are a crock, that have anything to do with why you did what you did. You're misrepresenting your position and the city's position before me. Isn't that what that finding means? Yes, Your Honor, the ALJ did find, and I cannot disagree, that the ALJ did not believe that those were Chief Aiken's motivated reasons. He found that Chief Aiken was, in fact, motivated by anti-union animus. But if that in and of itself is enough to award, first of all, the ALJ did not award sanctions. The city did not appeal the ALJ's finding that union animus motivated the decision and reinstated, promoted Sergeant Lieutenant and paid back that pay. That in and of itself cannot be enough for an award of sanctions. Or in every case where an ALJ found that union animus motivated a decision and someone said... The difference between finding union animus and turning around and saying that, in a sense, the Chief Executive Officer of the Police Department blatantly, blatant falsehoods before me while sworn, that's a finding that is far different than simply animus toward the union. Well, it really, it's... What the ALJ said was he did not test the legitimacy of the reasons and did not believe that Chief Aiken was motivated by them. It is the State Panel that called them false alternative reasons. But the State Panel didn't use the word blatantly false. You're right. The phrase blatantly false. You're right. But again, in every case where someone says it wasn't union animus and the ALJ says that it was, the ALJ is finding that the testimony is false. You testified you were motivated by these other things. I don't believe you. In fact, you were motivated by union animus. That is true in every case. Maybe not with those words, those adjectives, but that's the result in every case. Which is why made without reasonable cause is the second prong of the test. And there's no finding of that in this case, as the dissent pointed out. The purpose of the rule is not to punish unsuccessful litigants like the city in this case. There's case law cited in our brief, including the Barrow case, that says that sanctions are not warranted simply because an ALJ determines facts differently than those asserted by another party, which is exactly what happened in this case, albeit dressed with adjectives and adverbs. Sanctions are limited to cases where a party files a pleading or proffers testimony for an improper purpose. That is not the case here, and there was no finding from the ALJ that that, in fact, occurred. Chief Aiken testified to what was in his mind at the time of the decision, and the ALJ chose not to believe it, finding it unpersuasive, and not believing him. That, again, is not sufficient for an award of sanctions, because there was no finding that it was made without reasonable cause. What does the board mean when it uses the phrasing, never before offered? I understand what they mean by false alternative. Never before offered. At what juncture, how could these reasons have been offered in advance of the hearing? Because you made the point, that's the only time you testified. That's my point. There was only one time that Chief Aiken testified in this matter at that hearing. I believe that the state panel was relying on the deposition, not understanding that the deposition was in a completely different matter. He never testified. The respondent's answer was not found to be sanctionable, so it cannot be the answer. Chief Aiken had one shot at testifying in that case. He testified one time, on direct, and stated all of the reasons in his mind. The Policeman's Benevolent Protective Association pointed out, on the record, differences in his deposition testimony. But as I argued earlier, the deposition was in a separate matter. Chief Aiken testified over and over again that there were other things in his mind that he didn't recall. The standard for relief in the case was different. It was a due process, property right claim, not a union animus claim. And I think the state panel relied on deposition testimony in an independent matter, looking at the record. There was pages and pages of skirmishing between Chief Aiken and counsel for the Policeman's Benevolent Protective Association regarding that deposition. Is it unreasonable for the board to have determined to make that comparison? Yes, I think it's improper. Why? Well, first of all. I understand it's a different action and it involves due process. And Chief Aiken testified over and over again in the record in that matter. About the other reasons. Yes, and they're not in my mind. Whether or not he was prepared for that deposition, I don't know. But he clearly testified over and over again. There are other reasons, they're just not in my mind. The trial in this matter was almost two years later, maybe not quite, 18 months later. This litigation went on for a very long time, in two forums, with I think nine or ten days of protracted, interrupted testimony. The deposition was not close in time to this matter, not underlying this matter. I think it's improper for them to, especially given how aggressively Chief Aiken on his own protected the record by saying there are other things, I just don't remember them. What things did he offer in the deposition? What he offered in the deposition, I believe, were the merit and efficiency points and the gutted like a fish comment. Which one of Sergeant Williams' witnesses, Lieutenant Sorin, testified in fact occurred, the event occurred. Continue. Just in summary, Your Honors, again, the burden of proof is high for an award of sanctions in this case. No doubt that the ALJ in this case chose not to believe Chief Aiken and dressed that disbelief in adjectives, which clearly indicate that he did not believe Chief Aiken's testimony. That is not enough for sanctions under the rule. The purpose of the rule is to sanction someone who proffers testimony or raises allegations or denials for an improper purpose. There is no finding of that here and no evidence in the record to support it. Thank you. Thank you, Counsel. May it please the Court, I'm Joel DiAlvo. I represent the Appellant, Policeman Effluent Protection Association. Sanctions are appropriate because it is not reasonable to use shifting and false reasons to deny a promotion to the top person on the promotion list who had a long, distinguished career, reputation for being dedicated to upholding the law and for having well-written, complete, and accurate reports. Three of the shifting reasons were not even checked or investigated by the Chief. They had not previously been disclosed to either Mr. Williams or in his deposition. How about that? We've got a gap of time. We've got him relying on, if Ms. Doyle suggested that in his deposition he relied primarily on, or what was in his memory at that time were the lack of additional points and the comment about, I will enjoy seeing you gutted like a fish. And he testified to both of those at the deposition. Would that be right? If you remember. He did not testify gutted like a fish. He said gutted. Gutted. And he said, this bothered me. He didn't say it was a reason. But more important to this inquiry is what the ALJ said. The uncontested facts to which no exceptions were filed. A second reason for finding Aiken's promotion decision was motivated by UDM's. The first reason dealt with the merit and efficiency points. And when we asked for sanctions in this case, what we said is those reasons were false. The assistant chief sat in a meeting. He heard seven lieutenants talking about Mr. Williams. They all talked about his union activities. And he was contentious. He was a problem. He was not a team player. We said that's sanctionable because it's false. When they said that was the reason for firing when in fact it was UDM's. The board, to show that it wasn't an abuse of discretion, this is my argument, rejected that argument. They said we're not going to grant you fees for that because that was when they filed their answer to this case. But with respect to the second issue, the ALJ said the second reason for finding the promotion decision was motivated by UDM's is that at the instant hearing he gave other reasons for that decision. These reasons included Williams' prior refusal to become head of the vice unit. The instant of Williams allegedly asking Carol Ward, the chief secretary, to change minutes of the staff meeting. Williams' lack of concern about the department monies being spent on binders. And Williams' remark that the chief would be gutted if he appeared at a union meeting about the airport briefings. However, Aiken had not previously articulated any of these reasons either at the time of the decision not to promote Williams. And at that point he invited Williams to his office. And he said, I want to talk to you about the promotion. And Williams said, yes, I would like to hear what you have to say. Why did you not promote him? And he gave him the merit and efficiency reasons. None of these other reasons were stated. That's point one. Point two is, or during a related federal court proceeding, he made findings on that. And if they're taking the position that that evidence was admitted only for a limited purpose, and now it's being used against them in this unfair labor practice hearing to find a violation, they should have filed exceptions. And they didn't. So the law of the case is what's found. And that's what this administrative law judge did. The shifting of the reasons for this decision points to the conclusion that it was based on unanimous. Additionally, the validity of the asserted reasons are suspect, as there is no evidence that he did anything to validate their legitimacy. And this gets to the unreasonable nature of what they did in this case. They broke the cardinal rule with respect to Rule 137, with respect to filing pleadings before the courts. They did not make a reasonable inquiry as to whether or not these allegations were true or false. And with respect to these three items, three of the four items, the chief admitted he made no inquiry. First, on the vice unit issue, the chief admitted there's no prerequisite for lieutenants to be promoted, only if they had accepted a position like a vice unit director in the past. The chief did not ask Williams if his family issues would interfere with being a lieutenant. He had asked him when he wanted him to become vice unit head when he was sergeant, will this cause you a problem? And Williams said, yes, it's going to cause me a problem. I have a young family. Vice is a long job. It's many hours. It's around the clock. And it would interfere with my family life. He didn't state, nothing was stated to Williams when he spoke to the chief as to why there was no promotion. In other words, this vice unit issue did not come up in that first meeting after the promotion was denied. Nothing was stated in the federal court case about this. So no reasonable person would believe that Paul Williams did not want a promotion or that there was a basis for a lack of interest in being head of the vice unit as a reason for not granting the promotion. The staff minute meeting, he was accused by the chief of additional reasons for having embellished minutes of a meeting of the detective division where Williams said, I think some additional information was missed. So he sends an email to all the people who attended, including the deputy chief or the assistant chief. The assistant chief writes back. He said, yeah, I think you're right. His heart says to the chief, he tried to embellish the minutes. The assistant chief asked Lieutenant Siren to go investigate what in fact was the case. Siren said, I investigated. I find that it's really a misunderstanding. Williams didn't try and do that. The chief made no attempt to investigate whether or not Williams had actually requested an embellishment of the minutes. That's point number two. Now the notebooks. The chief says, I didn't make him, Lieutenant, request the notebooks. Williams was a major police investigator in the department on the detective division. There was a Latin King series of gang crimes in Bloomington. They had 17 defendants, a case that started in 1996 and 1997, and Williams knew he had to have a lot of photographs, a lot of surveillance information, and he wanted them in notebooks. So he bought four-inch notebooks instead of one-inch notebooks. The chief never made an investigation attempt to determine what the cost of the various notebooks was. A four-inch notebook costs $12.77. You don't deny a promotion if somebody buys a notebook for $12.77. A four-inch notebook costs more. So four one-inch notebooks would have cost $27. And a one four-inch notebook costs $13. And the chief is saying, I didn't promote you because of the notebooks. This is in the face of evidence. And as a result of this coming in, as the reason we had to bring in witnesses to talk about, $40,000 that was spent by Mr. Williams in the investigation of these crimes, which were based upon the purchase of drugs from informants, the purchase of informants. So he was in charge of $40,000. Nobody charged him with discipline, with anything for money that was misspent. The chief is using this six years later as a promotion denial, and the ALJ said it's not only false, it's a shifting reason. And what I'm telling you is it's added on without a reasonable inquiry, and that violates the cardinal rule of dealing with pleadings before courts. Now getting to the gutted comment. The gutted comment involves a protected statement. He found it to be a protected statement. They can't now come to you and say, isn't this a terrible thing that he said gutted. It's in the record. The ALJ said this is protected activity. He's telling the chief what's going to happen when he meets with the police officers who are really angry about the chief taking away overtime from the airport duties. He says you're going to get gutted. So the chief says in his testimony before the ALJ, I didn't use this. I'm adding this as a reason. But then you have coming into this case the testimony of an assistant chief who says, I heard this so many times from the chief that I really believe he denied the promotion because of that comment. So the ALJ says it's false for the chief to say it didn't affect him. What the chief said is he denied the gutted remark influenced his decision. And on the basis of the testimony of an assistant chief, on the basis of the testimony of a lieutenant, the chief said don't put this friend of Williams on a dog unit because they're close personal friends. He found that to be animus. In addition, the chief also brought in additional evidence, not considered necessarily by the board or by the ALJ with respect to additional reasons, nevertheless part of the record, that Williams had spent a lot of time on writing the probationary officer's report and whether the officer should be probationary employed. And the testimony was that he was never disciplined for writing this. This could not have been a reason for denying the promotion. And then excessive overtime allegations were made by a former assistant chief and a lieutenant came in and said I was in charge of investigating this information with respect to the overtime and I found that there was no wrongdoing and in fact there were no overtime records. So what does this all mean in the context of a shifting reason and unreasonable actions? It means that the chief now comes in, puts in shifting reasons without even making a reasonable inquiry. We spent a lot of money and a lot of time and a lot of witnesses to come in and testify none of these were true. And that's basically what this case is about. So you have two prongs being met. It's unreasonable and it's false. And then it fits within the context of the Pritzker case that they have relied upon to say that Pritzker, there was a misrepresentation. But in fact what Pritzker really says is that when you make an allegation in a pleading you have to make a reasonable inquiry. And that was not done here. And that's what this case is about from our perspective. With respect to the question of service, most of that will be taken up by counsel for the board. But we want to point out one thing. There's an affidavit here from counsel. It says one comment. It's a bare bones affidavit. It says that she never got it. It doesn't say that a reasonable inquiry was made within the office, within the mailroom, within secretaries or anybody else. It merely says I and others didn't get it. So the part on others constitutes in my mind hearsay. And with respect to trying to vacate an order, they rely upon a 1920 case of the Illinois Appellate Court called the State of August Luer, L-U-E-R. Our argument is that's pretty old common law. And now we have a code of civil procedure that highlights in Section 5-2-5-2-1301 that points out how a party in a litigant may vacate judgments. So not relying upon 1301, but relying upon this old common law case, the rule is an attack on a final judgment on the ground of fraud, accident or mistake is limited to situations where the court's jurisdiction was based upon fraud, accident or mistake. There's no allegation here that there was fraud. There's no allegation that there was a mistake. You have two back-to-back filings. It went to the board with certificates of service indicating they went to counsel. First, on January 4th, the document the appellant sent. And second, an errata sheet. They claim they never got it. Most important is that they waited. They didn't call the board immediately after the order on fees was granted to say, you know, we didn't get this. What can we do about it? Did you get the full document? Okay. No, no, I'm only getting 15 minutes. They never went to the board to say we didn't get it. They waited until they filed their notice of appeal. And then in their brief they say the first time they read the motion that was filed by the PBPA was when the record of appeal was filed. That's pretty surprising. If I got a motion like that or an order like that, I would have immediately called the board. That's due diligence in my mind. I would have said I want to see the order. Not the order. I want to see the actual motion. Or she could have called me and said I want the motion. It would have been sent immediately by messenger. Those are the reasons why we think the appeal should be denied. Thank you. May it please the court. I'm Eric Druid and I represent the Illinois Labor Relations Board. The board has a few concerns in this case that I want to put forward. The first is that if this court were to accept the affidavit of the type submitted by the city, it would in essence undermine or even nullify the board's service of mail rules. As the charging party noted, the affidavit is a real bare bones affidavit. And if you look at the cases cited in our brief, we cite a number of cases that say that a defendant or a party cannot avoid service by mail by mere disclaimer. And this affidavit is the functional equivalent of a disclaimer. There's no statement as to efforts that were made in order to try to determine whether the motion was ever received by the office. It's just a, hey, I didn't get it. And if we were to accept that as a reason to reverse the board's decision, then it would be very difficult for parties in the board to rely upon service by mail because you would always have the doubt, did the other party actually receive it? Do we have to check with them before we issue a motion? And so the city has conceded that the board's service by mail rules are valid, but if you were to accept their position that service is invalid in this case simply on the basis of a bare bones affidavit, you would have the effect of undermining or nullifying those rules because the party couldn't rely upon service by mail. The second point the board would like to get across deals with the exceptions. Neither the charging party nor the board has taken the position that because you don't file exceptions you can't later contest motion for sanctions. That's a straw person. What the board's brief argued is that the factual findings in the ALJ's position are binding on the basis of their failure to file exceptions. And the ALJ's factual findings were so strong that they're, in essence, they've already, while the ALJ didn't use the magic words without reasonable cause, as Justice Connick, the part that you were quoting, the ALJ might as well have. I mean, the findings were so strong, not only thinking that the charging party's arguments were more persuasive than the chief's arguments, but finding them as so uncredible as to be additional evidence of being unanimous. So this is not a garden variety case where the prevailing party, I mean the losing party, is being punished simply for mounting a defense. This is a case where the ALJ made very strong factual findings, not only disbelieving their explanation, but finding it as additional evidence of being unanimous. In a case such as that, sanctions are well within the board's discretion, and if they fail to file exceptions, they can't later try to attack the factual underpinnings of the board's sanctions decision. The final point that the board would like to stress is that once the elements are met for sanctions under the board's rule, that a statement was false and that a statement was made without reasonable cause, then the board has discretion whether or not to impose sanctions in a particular case. While it's true the board should not exercise its discretion lightly, on appellate review, the board's decision is reviewed for abuse of discretion. In this type of case, the sanctions decision was well within the board's discretion. If you look at the cases where a sanctions decision has been reversed, there was absolutely no basis for the board's sanctions decision, or the board's sanctions decision rested on a thin reed of support. In this case, the support was extensive. If you look at the ALJ's findings of fact, which are uncontested, those provide ample reason for the imposition of sanctions. And the board did not lightly impose sanctions in this case. As pointed out by the charging party, their motion for sanctions asked for sanctions on the basis of the city's answer to the charge, as well as on the basis of the chief's testimony at the hearing. The board declined to impose sanctions on the basis of the answer, giving them the benefit of the doubt, but found that the chief's testimony and conduct at the trial was the type of testimony that needs to be deterred by sanctions. The final point that I'd like to address is the point raised by the city relating to the ALJ's not imposing sanctions on his own. The board is certainly well within its discretion to impose sanctions upon the motion of a party, even if the ALJ did not correspond to impose sanctions. The ALJ may have decided that if a party wanted, you know, the ALJ may have had his own reasons for not imposing sanctions on his own. It's certainly no detriment or discredit to the board's decision that it was obligated to impose sanctions until the charging party moved for sanctions. So the fact that the ALJ did not use the magic words without reasonable cause, and the fact that the ALJ did not correspond to impose sanctions, that should have little bearing on the board's exercise of its discretion to impose sanctions in this case. Is it important as to what the amount of the sanctions were? You're asking, does the amount of the sanctions relate to the board's discretion? I mean, the rule itself does not, gives the board, it lists a wide array of sanctions that the board may impose based on the facts of a particular case. I don't believe that the city has argued that some sanctions would be an abusive sanction. Their position seems to be that any sanction in this case would be an abusive discretion. I see that my time has expired. Thank you very much. I will be brief. First, with regard to the motion and the affidavit, we did not receive it. My office did not receive it. I think my affidavit, although it doesn't say it, should suggest that I did a diligent service. We were not served. I was notified by the city, the client, that the ruling had come down, and I will not add to the record and get into a debate about what my office did or did not do when that call was made. Suffice to say, the council's assumptions as to what I did or did not do are incorrect. But the bottom line is, my office did not receive the motion, which is why we offer the affidavit as admissible. The appeal is still valid. The reason we offer the affidavit is because the state panel relied on the city's failure to respond as part of its justification for awarding sanctions. Council for the Policeman's Benevolent Protective Association essentially argued the merits of the promotion decision, which is not why we're here. No doubt, the ALJ found that Chief Aikens was motivated by union animus. That's what he held in the decision. ALJ did not believe Chief Aiken, and necessarily then found his testimony to be false. As I said in my opening argument, that occurs in essentially every case where someone is accused of an improper motive, denies they had an improper motive, testifies to a proper motive, and is found, essentially loses, and is found not to be believed. If you look at the ALJ's order, which is of course in the record, what he says, in addition to saying the Chief's reasons were false, he suggests that they could be true by stating even if the decision to promote Williams was not motivated by, was motivated by the low number of merit efficiency points and not union animus, respondents still violated the law for these reasons. And the reasons are because the ALJ found that the meeting was tainted by other officers anti-union animus. So the ALJ, in his own order, suggests that this is not, without a   reasonable cause, and in fact suggested that it could have been, but still would have been unlawful. This is not a fee-shifting statute. The burden for sanctions is high. In every case, including the Pritzker case that we cited, every case stated by the state panel, the respondent admitted the falsity and essentially the improper purpose. That is not the case here. Excuse me. As the dissent points out, there was no finding by the administrative law judge, no finding by the panel, and no record evidence that while the decision wasn't true, it was also made without a reasonable basis and without reasonable cause. The state panel not applying that test and holding the charging party to the burden is an abuse of discretion. Thank you. Thank you, counsel.